FILED
2026 NOV -5 AM 9:56
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**YOSHI D. MATTHEWS,**
Plaintiff,

v.

**iHeartMedia, INC.; RADIO LICENSE HOLDING CBC, LLC; CUMULUS MEDIA INC.; URBAN ONE, INC.; BRODERICK HARVEY, professionally known as STEVE HARVEY; and D. L. HUGHLEY,**
Defendants

Case No. 3:26-cv-01768

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

Plaintiff Yoshi D. Matthews, proceeding pro se, alleges as follows:

**I. NATURE OF THE ACTION**

1. This action arises from identified radio broadcasts and syndicated media programming that Plaintiff personally heard on the dates and times set out below Plaintiff recorded the dates and times in her calendar The challenged statements concerned her professional reputation, ability to obtain employment, education, political candidacy, and personal circumstances.

2 Plaintiff brings claims under Tennessee law for defamation, false-light invasion of privacy, and intentional interference with business and professional relationships based on the publications and resulting injuries described below

3 The statements identified below conveyed, in context, damaging factual implications about Plaintiff's professional future and circumstances Plaintiff alleges that the statements referred to her and harmed her reputation, business and employment prospects

4 Two particularly significant statements were aired on May 6, 2026, at approximately 4 20 p.m , on a program associated with D L Hughley, and on March 19, 2026, at approximately 7 10 a m , on a program associated with Steve Harvey Plaintiff recorded the dates and times in her calendar and quotes the words she heard

5. Plaintiff's allegations concerning the broadcasts are based on her personal hearing of the statements and her contemporaneous calendar entries. The calendar entries identify when she heard the broadcasts and the words she recorded.

6 The broadcasts caused reputational, economic, professional, and emotional harm, including harm to Plaintiff's tax-preparation business, employment prospects, professional relationships, and campaign resources, as described below

II. JURISDICTION AND DIVERSITY OF CITIZENSHIP

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff alleges, on information and belief, that the parties are citizens of different states. Plaintiff seeks damages in excess of the jurisdictional threshold based on the conduct alleged in this Complaint

8 Plaintiff is a natural person domiciled in Goodlettsville, Tennessee, and is therefore a citizen of Tennessee for purposes of diversity jurisdiction

9. Defendants iHeartMedia, Inc , Cumulus Media Inc., and Urban One, Inc are alleged to be corporations incorporated in states other than Tennessee, with their respective principal places of business outside Tennessee. Their citizenship is governed by 28 U.S.C § 1332(c)(1).

10. Plaintiff alleges on information and belief that the individual defendants, Broderick Harvey, professionally known as Steve Harvey, and D. L. Hughley, are domiciled outside Tennessee. Their respective domiciles are facts subject to confirmation through publicly available information, party disclosures, and, if necessary, discovery

11 Defendant Radio License Holding CBC, LLC is a limited liability company Plaintiff does not presently possess information sufficient to identify independently every member of that company or every person or entity whose citizenship is attributable to it. That ownership information is reasonably expected to be available to the company and its representatives.

12. Plaintiff therefore alleges on information and belief that Radio License Holding CBC, LLC has no member, whether an individual or an entity, whose citizenship is the same as Plaintiff's Tennessee citizenship Plaintiff requests that the company disclose the identity and citizenship of each of its members and, if any member is itself an unincorporated entity, the identity and citizenship of every person or entity whose citizenship is attributable through each ownership layer

13 Plaintiff makes these allegations based on the information presently available to her and expressly requests a reasonable opportunity to confirm the jurisdictional facts through the defendants' disclosures and, if necessary, limited jurisdictional discovery. Plaintiff does not ask the Court to presume that diversity exists merely because the parties are United States citizens; she asks that the relevant state

citizenship and domicile facts be established through the procedures available in this action.

14. Plaintiff respectfully requests that the Court direct the parties to provide the information necessary to determine citizenship under 28 U.S C § 1332(a), including any disclosures required by Federal Rule of Civil Procedure 7 1(a)(2), and permit Plaintiff to amend or supplement these jurisdictional allegations if the disclosures reveal additional facts requiring clarification.

15 Plaintiff asserts diversity jurisdiction in good faith based on the information presently available and reserves the right to supplement these allegations promptly after receiving information not reasonably accessible to her before the defendants appear or make the required disclosures

## III. PARTIES AND IDENTIFICATION FOR MAILING

16. Defendant iHeartMedia, Inc is a media company involved in radio broadcasting, programming, syndication, or distribution Its principal executive offices are identified in its SEC filings as 20880 Stone Oak Parkway, San Antonio, Texas 78258.

17 Defendant Radio License Holding CBC, LLC is an entity associated with broadcast licensing or operations Plaintiff identifies an address at 780 Johnson Ferry Road, Suite 500, Atlanta, Georgia 30342, subject to confirmation of the entity's current registered agent and legally proper service method

18. Defendant Cumulus Media Inc. is a media company associated with radio broadcasting and programming. Its SEC filings identify its principal executive offices at 780 Johnson Ferry Road NE, Suite 500, Atlanta, Georgia 30342

19. Defendant Urban One, Inc. is a media company associated with radio broadcasting and media programming. Its SEC filings identify its principal executive offices at 1010 Wayne Avenue, 14th Floor, Silver Spring, Maryland 20910

20. Defendant **Broderick Harvey, professionally known as Steve Harvey**, is an individual broadcaster and media personality Plaintiff alleges that statements made during broadcasts associated with Steve Harvey are relevant to this action. Plaintiff must establish the precise statements attributable to him and the legal basis for any liability.

21. For correspondence and mailing purposes, Plaintiff intends to send information concerning Defendant Broderick Harvey, professionally known as Steve Harvey, to:

Broderick Harvey, professionally known as Steve Harvey
c/o iHeartMedia, Inc  Legal Department
20880 Stone Oak Parkway
San Antonio, TX 78258

22 Defendant D. L. Hughley is an individual broadcaster and media personality. Plaintiff alleges that statements aired on programs associated with him, including the May 6 and September 2026 broadcasts identified below, were defamatory or placed Plaintiff in a false light and harmed her professional and business interests

23 For correspondence and mailing purposes, Plaintiff intends to send information concerning Defendant D  L  Hughley to

D  L. Hughley
Urban One/Reach Media, Inc
Attn  Legal Department
1010 Wayne Avenue, 14th Floor
Silver Spring, MD 20910

24. The addresses in paragraphs 21 and 23 are provided for correspondence  Formal service must be completed in accordance with Federal Rule of Civil Procedure 4

25 Each corporate Defendant is named because of its alleged role in producing, publishing, syndicating, licensing, or distributing the broadcasts at issue. Plaintiff seeks to establish each entity's role through the entities' broadcast, licensing, syndication, and corporate records

## IV. PLAINTIFF'S PROFESSIONAL AND EDUCATIONAL BACKGROUND

26 Plaintiff left her employment with Memphis Light, Gas and Water Division in approximately 2011 and thereafter pursued self-employment and other business activities

27 Plaintiff established a tax-preparation business and developed client relationships. The business depended on clients' confidence in her honesty, handling of confidential financial information, competence, and professional reliability.

28 Plaintiff later pursued further education and accounting-related employment to rebuild and expand her professional opportunities

29 During 2026, Plaintiff was completing a master's degree in accountancy at Middle Tennessee State University. Plaintiff expected to complete her final coursework in October 2026 and graduate in December 2026.

30 Plaintiff applied for accounting, finance, tax, and other professional positions while pursuing her degree.

31 Plaintiff alleges that her professional reputation and ability to obtain employment were important to her efforts to rebuild her income and establish a long-term career.

## V. TAX-PREPARATION BUSINESS AND EFIN HISTORY

32 Plaintiff obtained an Electronic Filing Identification Number ("EFIN") for her tax-preparation business.

33. Plaintiff alleges that she held the EFIN for approximately one year and eleven months before the Internal Revenue Service deactivated, revoked, or terminated her participation in electronic filing.

34. Plaintiff alleges that the EFIN action impaired her tax-preparation operations and contributed to the loss of clients, revenue, and professional opportunities

35. A representative assigned to Plaintiff's account at the tax-preparation software company stated that the representative had never encountered another instance of an EFIN being deactivated Plaintiff will identify the representative from her records if available.

36 The EFIN deactivation impaired Plaintiff's tax-preparation operations and contributed to the loss of clients, revenue, and professional opportunities Plaintiff relies on this event as background to her business history, this action seeks recovery from media Defendants only for injuries caused by their actionable conduct.

37. Plaintiff alleges that the EFIN action occurred in approximately November 2014 She will rely on the relevant IRS records to establish the precise date and circumstances

38 Plaintiff alleges that she pursued administrative steps concerning restoration of her EFIN in 2025 According to Plaintiff, the IRS Appeals process reversed an earlier decision on January 7, 2025, and instructed her to submit a new application.

39 Plaintiff further alleges that a later EFIN application was denied in October 2025

40 These EFIN proceedings are not asserted as claims against the IRS in this action Plaintiff includes them as background to her professional history and alleged economic circumstances

41. Plaintiff recognizes that losses associated with the EFIN action are recoverable from a media Defendant only if she proves that actionable conduct by that Defendant proximately caused those losses

## VI. EARLIER RADIO REFERENCES AND HISTORICAL CONTEXT

42. In approximately 2012, while Plaintiff was living with her aunt, Teresa Taylor, a broadcast on WRBO referenced the first name "Yoshi." Plaintiff includes this event as part of the chronology of broadcasts she heard.

43. Plaintiff heard later radio references that she understood to concern her professional circumstances She recorded the relevant events and associated dates when available in her calendar.

44. Between approximately 2015 and 2022, Plaintiff heard additional radio-related statements that she associated with tax-preparation clients, a person she identifies as Hope Murray, a reported $500 IRS-report threat, and the phrase "These folk said they are going to report you if you don't give me $500 dollars."

45 Plaintiff includes these earlier events as historical context She seeks damages only for publications actionable within the applicable limitations period and relies on earlier events as context where permitted by law.

46 Plaintiff does not allege that an older publication becomes timely merely because it is part of a longer chronology Any claim based on an earlier publication remains subject to the applicable limitations period and other defenses

## VII. JULY 2023 SEARCH AND SUBSEQUENT BUSINESS CONCERNS

47. In July 2023, federal agents searched Plaintiff's residence while Plaintiff was away on a trip to California with her children

48. Plaintiff alleges that after the search she heard a broadcast associated with Steve Harvey and Nephew Tommy discussing her credit-card limits, saying she wears Versace because they searched through her underwear drawer, and comparing tax-preparation fees Plaintiff recalls Steve Harvey said, "we'll charge you $1,500".

49. Plaintiff lost tax-preparation clients and business as clients were redirected to other tax preparers Her business depended on trust and professional reputation, and the loss of clients reduced her revenue and business opportunities

50 Plaintiff alleges that the false and misleading statements, false-light portrayals, lies, and rumors disseminated by the media Defendants caused harm to Plaintiff's reputation professional standing business relationships employment prospects and personal well-being Plaintiff alleges that this conduct contributed to the harm she experienced in connection with the events described in this Complaint Plaintiff bases her claims on the Defendants' own alleged actionable conduct and the resulting injuries, including the extent to which the false and misleading statements and rumors caused or contributed to those injuries

## VIII. RELOCATION AND CONTINUING CONCERNS

51. Plaintiff alleges that she experienced stalking, harassment, or other professional disruption while residing in Memphis, Tennessee.

52 In June 2024, Plaintiff relocated to Goodlettsville, Tennessee.

53. Plaintiff experienced continuing concerns about harassment and interference after relocating. Plaintiff alleges that the broadcasts and other incidents formed part of the circumstances affecting her, and identifies specific broadcasts and resulting professional harm in this Complaint

54 Plaintiff relies on the dates and times recorded in her calendar, her personal hearing of the broadcasts, and the business and employment records relevant to the resulting harm

## IX. MARCH 19, 2026 STATEMENT ATTRIBUTED TO STEVE HARVEY

55 On March 19, 2026, at approximately 7 10 a m., Plaintiff heard the following statement on a radio show associated with Steve Harvey "YOUR ATTORNEY IS NOT GOING TO BE ABLE TO HELP YOU." Plaintiff recorded the date and time in her calendar

56 Plaintiff understood the statement as referring to her and her legal representation. The statement conveyed that her attorney would be unable to protect or assist her and was intimidating in the context of the other broadcasts and her ongoing efforts to protect her professional livelihood.

57 The statement undermined Plaintiff's confidence in obtaining legal assistance and contributed to the reputational and emotional harm caused by the broadcasts described in this Complaint

58. The statement was delivered with apparent confidence and, in the context of the other statements identified here, conveyed a message about circumstances that could damage Plaintiff's life and professional prospects.

59. Plaintiff relies on the March 19 statement as part of the context and course of publications alleged in this Complaint.

60 Plaintiff does not base any claim of access to privileged attorney-client communications solely on the March 19 statement

## X. APRIL 7, 2026, DEPARTMENT OF JUSTICE ANNOUNCEMENT

61 Plaintiff identifies an announcement and link published by the United States Department of Justice on April 7, 2026, concerning a federal indictment involving Plaintiff and her son, Ricky

62. Plaintiff alleges that the existence and public discussion of the criminal proceedings affected the circumstances in which she pursued education, employment, and her political campaign.

63. This action does not ask the Court to determine guilt or innocence in the separate criminal case. Plaintiff does not contend that an indictment itself proves the truth of the allegations against her

64 Plaintiff alleges that the media Defendants used broadcasts, false and misleading statements, false-light portrayals, and rumors to damage her reputation and contribute to the circumstances that led to the government investigation and indictment described in this Complaint. Plaintiff further alleges that the Defendants' conduct was part of a continuing pattern of targeting her, publicizing false or damaging information about her, and tracking or monitoring her activities and movements Plaintiff contends that this conduct has caused continuing harm to her reputation, business relationships, employment opportunities, political aspirations, and personal well-being. Plaintiff bases these allegations on the broadcasts, statements, events, and other evidence described in this Complaint and alleges that the resulting harm continues to affect her today

## XI. MAY 6, 2026, STATEMENT ATTRIBUTED TO D. L. HUGHLEY

65. On May 6, 2026, at approximately 4:20 p.m , Plaintiff heard the following statement on a radio show associated with D L. Hughley: "YOU WANT US TO VOTE FOR HER BUT YOU HAD US TEARING THIS CHIC DOWN." Plaintiff recorded the date and time in her calendar

66. Plaintiff understood the statement as referring to her and as addressing political support, public criticism, and the destruction of her reputation.

67 Plaintiff alleges that when D L Hughley stated, "YOU WANT US TO VOTE FOR HER BUT YOU HAD US TEARING THIS CHIC DOWN," he was referring to the destruction of Plaintiff's reputation and the harm inflicted upon her across multiple areas of her life. Plaintiff understood the statement as extending beyond her political candidacy to encompass the alleged damage to her personal life, professional reputation, tax-preparation business, client relationships, employment opportunities, educational and career goals, financial stability, and overall well-being Plaintiff alleges that the statement portrayed the destruction of her life and livelihood as an ongoing effort and that, considered in the context of the other statements and conduct described in this Complaint, it supports her claims for defamation, false-light invasion of privacy, and interference with business relationships

68. The statement contributed to the harm to Plaintiff's reputation and prospects and is relevant to the meaning and effect of the other broadcasts identified in this Complaint.

69 Plaintiff alleges that the May 6 statement was published to radio listeners and referred to her in the context of her Senate candidacy and the preceding and subsequent broadcasts. Plaintiff relies on the exact words she heard and the contemporaneous calendar entry documenting the date and time

70 Plaintiff alleges that the May 6 statement, considered with the other publications described here, contributed to the reputational and professional injury she suffered

## XII. POLITICAL ACTIVITY AND CAMPAIGN

71 Plaintiff decided in January 2026 to seek election to the United States Senate in Tennessee.

72 Plaintiff alleges that her candidacy and public activities became additional subjects of discussion while she was pursuing employment and rebuilding her professional life.

73 Plaintiff heard a broadcast associated with Steve Harvey in which the speaker stated that Plaintiff's campaign "wasn't going anywhere." Plaintiff recorded this statement as part of the broadcasts concerning her political candidacy

74. Plaintiff understood the statement as referring to her candidacy and as disparaging her campaign and political prospects.

75 Plaintiff paid Redvail to develop a campaign website at https.//www yoshimatthews.com/ Plaintiff alleges that the campaign page later became unavailable after her first criminal court appearance and that she established a different campaign website at https //yoshimatthewssenate com/

76 In early June 2026, Plaintiff heard remarks by Steve Harvey concerning a politician and assassination. In the context of her candidacy and the broadcasts described here, Plaintiff understood the remarks as directed toward her

77. Plaintiff alleges that the June remarks contributed to her concern for her safety and to the overall effect of the broadcasts on her political activities and personal well-being

78 Plaintiff experienced an anaphylactic medical event in June 2026. Plaintiff does not allege that a Defendant caused the medical event absent medical and other evidence establishing a legally sufficient causal connection

## XIII. SEPTEMBER AND OCTOBER 2026 BROADCASTS

79 During September 2026, Plaintiff was pursuing graduate education and employment. Plaintiff alleges that broadcasts addressed her ability to graduate, obtain employment, and earn a living

80. On September 3, 2026, Plaintiff heard a broadcast associated with The D L. Hughley Show in which a speaker she identified as Jasmine stated "even if she graduates she won't be able to get a job " Plaintiff recorded the date and time in her calendar

81 Plaintiff understood the statement as referring to her and as asserting that she would be unable to obtain employment even if she completed her graduate degree. The assertion was false and damaging because Plaintiff was actively pursuing her Master of Accountancy degree and applying for professional positions

82 The September 3 statement publicly portrayed Plaintiff as unable to obtain employment despite her education and job search Plaintiff alleges that the statement harmed her professional reputation and employment prospects.

83 On September 10, 2026, Plaintiff heard a broadcast associated with The Steve Harvey Morning Show in which a speaker she identified as Shirley stated that Plaintiff "might not have a job." Plaintiff recorded the date and time in her calendar.

84. Plaintiff understood the September 10 statement as referring to her employment prospects In the context of her job search and graduate education, the statement further damaged her professional reputation and prospects.

85 On September 22, 2026, Plaintiff participated in a telephone interview from approximately 2 00 p m. to 2 35 p.m

86 Later that afternoon, while driving on errands, Plaintiff heard a segment of The D L. Hughley Show in which a speaker she identified as Kyle stated "she's not stuttering anymore." Plaintiff recorded the event in connection with her September 22 telephone interview, which lasted from approximately 2:00 p.m. to 2 35 p m.

87. Plaintiff understood the statement as referring to her and her speech during the interview earlier that afternoon. Plaintiff alleges that the timing and subject of the broadcast were damaging and relevant to the pattern of statements concerning her employment and professional prospects.

88. The September broadcasts addressed Plaintiff's education and employment prospects in a manner that portrayed her future as foreclosed and harmed her reputation while she was actively seeking work.

89 On October 5, 2026, Plaintiff heard a segment of The D. L Hughley Show during which D. L. Hughley stated: "did you cry?" Plaintiff recorded the date and time in her calendar.

90 Plaintiff understood the question as referring to her in the context of the preceding broadcasts and events She alleges that the statement contributed to the continuing public disparagement of her circumstances.

91. Plaintiff observed that the delivery of certain later segments appeared more guarded or careful She alleges this as an observation about the broadcasts, not as a separate claim of concealed wrongdoing

92 The March 19, May 6, September, and October statements, considered together and in their respective contexts, referred to Plaintiff and contributed to the injury to her reputation, education, employment prospects, and professional relationships

## XIV. EDUCATION, EMPLOYMENT, AND PROFESSIONAL HARM

93 Plaintiff was pursuing a master's degree in accountancy at Middle Tennessee State University during the events alleged. Plaintiff had career-related activities scheduled for September 2026 and anticipated graduation in December 2026

94 Plaintiff alleges that she was on a professional path toward employment with Ernst & Young ("EY") and other accounting or professional-services employers

95. In an internal-audit class, Plaintiff's instructor made comments that Plaintiff understood as signaling knowledge of her indictment Plaintiff experienced the comments as disruptive to her studies and professional development

96 Plaintiff experienced harassment and disruption in her academic environment. Plaintiff alleges these events as part of the circumstances affecting her education, while her claims against the named media Defendants rest on the broadcasts and other actionable conduct attributed to them

97 In October 2026, EY informed Plaintiff that it would not move forward with her application. Plaintiff alleges that the rejection occurred while the broadcasts concerning her employment prospects were being aired That same day of receiving the disparaging news On October 5, 2026, Plaintiff heard a segment of The D L. Hughley Show during which D L Hughley stated "did you cry?" Plaintiff recorded the date and time in her calendar.

98 Plaintiff alleges that the broadcasts impaired her reputation during her professional job search and seeks damages for employment losses to the extent the evidence establishes that the publications caused those losses.

99 Plaintiff seeks recovery for lost employment and professional opportunities caused by the publications and resulting injury to her professional reputation

## XV. POLICE BENEVOLENT ASSOCIATION SCREENING AND ENDORSEMENT

100 Plaintiff was invited to appear before the candidate-screening committee of the Tennessee Division of the Southern States Police Benevolent Association. The invitation identified August 27, 2026, as the screening date and described a process for considering candidates for endorsement

101 Plaintiff appeared before representatives of the Association and discussed her views on law-enforcement issues

102 By letter dated September 4, 2026, Gene Sasscer, Tennessee Division President, informed Plaintiff that, following consideration and review of the candidates, the Association was unable to endorse her candidacy at that time

103. Plaintiff understood the Association's decision as related to her pending federal indictment The Association's September 4, 2026, letter stated that it was unable to endorse her candidacy at that time.

104. Plaintiff alleges that the denial deprived her campaign of a potential source of endorsement and political support Plaintiff further alleges that she received no campaign donations and that the absence of donations and endorsement support limited her campaign resources.

105 Plaintiff alleges that the denial of endorsement and absence of campaign donations limited potential political support and campaign resources She seeks campaign-related damages to the extent those losses were caused by actionable publications and are legally recoverable

## XVI. LEGAL STANDARDS

106 Under Tennessee law, a defamation claim generally requires a defamatory statement concerning the plaintiff, publication to a third party, fault on the part of the defendant, and resulting injury *West v Media General Convergence, Inc* , 53 S W.3d 640 (Tenn. 2001), *Memphis Publishing Co v Nichols*, 569 S.W.2d 412 (Tenn. 1978)

107 If Plaintiff is deemed a public figure or limited-purpose public figure for a particular controversy, she must prove actual malice—that the responsible defendant knew the statement was false or acted with reckless disregard for whether it was false *New York Times Co v Sullivan*, 376 U.S. 254 (1964), *Charles v McQueen*, 693 S W 3d 262 (Tenn. 2024).

108 Actual malice is a subjective standard It is not established merely by hostility, failure to investigate, or the fact that a reasonable person would have acted differently Plaintiff must identify facts supporting a reasonable inference that the speaker knew the statement was false or seriously doubted its truth *Harte-Hanks Communications, Inc v Connaughton*, 491 U S 657 (1989).

109 Tennessee recognizes false-light invasion of privacy. The claim requires publicity placing the plaintiff in a false light that would be highly offensive to a reasonable person, together with the applicable fault standard. *West*, 53 S.W.3d at 643–48

110 Tennessee recognizes intentional interference with business relationships where the required elements are established, including a specific existing or prospective business relationship, the defendant's knowledge, intent, improper motive or means, and resulting damages *Trau-Med of America, Inc v Allstate Insurance Co* , 71 S.W.3d 691, 701–02 (Tenn. 2002).

111 The claims are governed by Tennessee law, including the elements of defamation, false-light invasion of privacy, and intentional interference with business relationships, the applicable constitutional standards, and the relevant limitations periods

112 The statements identified in this Complaint were false or misleading factual assertions, or conveyed false factual implications, about Plaintiff's professional future and circumstances. Plaintiff alleges that the statements were defamatory and placed her in a false light

## XVII. COUNT I — DEFAMATION

113. Plaintiff incorporates paragraphs 1 through 114 as though fully set forth herein

114 The September 3 and September 10, 2026 broadcasts were communicated to radio listeners and referred to Plaintiff. The statements concerned her ability to graduate, obtain employment, and earn a living.

115 Plaintiff alleges that the statements concerning her ability to graduate, obtain employment, or earn a living conveyed or implied factual assertions about her professional prospects and circumstances.

116 Plaintiff alleges that the challenged factual implications were false or misleading and harmed her reputation and professional standing, causing or contributing to emotional distress and economic injury.

117. The March 19, 2026, statement attributed to Steve Harvey and the May 6, 2026, statement attributed to D. L. Hughley form part of the publications alleged

in this Complaint and provide context for the later statements concerning Plaintiff's employment and political prospects.

118 The responsible Defendants published the challenged statements with the degree of fault required by Tennessee law. Plaintiff alleges that the statements' wording, timing, repetition, and context support the inference that the speakers acted with knowledge of falsity or reckless disregard for the truth, to the extent actual malice is required.

119 Plaintiff seeks compensatory damages and, if the applicable legal standard is met, punitive damages for defamation

## XVIII. COUNT II — FALSE-LIGHT INVASION OF PRIVACY

120. Plaintiff incorporates paragraphs 1 through 121 as though fully set forth herein

121 Plaintiff alleges that the challenged broadcasts publicized a portrayal of her as someone whose professional future was foreclosed or who would be unable to obtain employment despite pursuing graduate education

122. Plaintiff alleges that this portrayal was false and highly offensive to a reasonable person because it presented her profession al prospects in a misleading manner and damaged her reputation while she was actively pursuing employment.

123 The March 19 and May 6 statements contributed to the context in which later broadcasts portrayed Plaintiff's professional future as foreclosed The publications placed Plaintiff before the public in a false light that would be highly offensive to a reasonable person and were made with the degree of fault required by Tennessee law

124. The responsible Defendants knew or recklessly disregarded that the portrayal of Plaintiff's professional future was false or misleading, as alleged from the wording, context, and repetition of the statements

125. Plaintiff alleges that the publicity caused injury to her reputation, professional relationships, and emotional well-being.

126 Plaintiff seeks damages available under Tennessee law for false-light invasion of privacy.

## XIX. COUNT III — INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

127. Plaintiff incorporates paragraphs 1 through 128 as though fully set forth herein.

128. Plaintiff alleges that she maintained existing and prospective business relationships with tax-preparation clients and prospective clients and pursued employment and professional relationships, including with EY.

129. Plaintiff alleges that her tax-preparation business and later employment efforts depended on professional trust and reputation.

130 Defendants who knew of Plaintiff's existing or prospective business and employment relationships and used improper means or an improper motive to disrupt those relationships are liable if the elements of Tennessee law are established.

131 The challenged statements concerning Plaintiff's honesty, professional character, education, and ability to work interfered with her tax-preparation business relationships and prospective employment relationships Each Defendant is liable to the extent it published, produced, syndicated, or distributed the actionable statements and the required elements are proven

132 The statements disrupted Plaintiff's business and professional relationships and caused economic injury, including lost clients, revenue, and employment opportunities.

133 Plaintiff seeks damages for intentional interference to the extent all elements recognized under Tennessee law are satisfied

## XX. DAMAGES AND CAUSATION

134. Plaintiff incorporates paragraphs 1 through 135 as though fully set forth herein.

135 Plaintiff alleges that actionable conduct caused injury to her professional reputation, emotional well-being, and ability to pursue business and employment opportunities

136 Plaintiff seeks compensation for proven loss of tax-preparation clients, lost business revenue, lost employment or professional opportunities, and other economic losses legally caused by the actionable conduct of a Defendant

137 Plaintiff seeks compensation for reputational injury, humiliation, emotional distress, loss of income to provide for my children, and other non-economic damages to the extent permitted by Tennessee law and supported by evidence.

138 The EFIN deactivation disrupted Plaintiff's tax-preparation business. Plaintiff seeks recovery from media Defendants for losses caused by their actionable publications, not for the EFIN action itself

139 Plaintiff alleges that the denial of the Police Benevolent Association's endorsement and the absence of campaign donations limited potential sources of political support and campaign resources Plaintiff seeks recovery for campaign-related losses only to the extent legally recoverable and proven to have been caused by actionable conduct of a Defendant.

140. Plaintiff alleges that she was not selected for certain employment opportunities and that her professional reputation was harmed She seeks recovery only for losses for which evidence establishes the required causal link

141 Plaintiff seeks punitive damages only if the applicable legal standard is met. Under Tennessee law, punitive damages require clear and convincing evidence of the requisite culpable conduct. *Hodges v S C Toof & Co* , 833 S W 2d 896, 901 (Tenn 1992)

142 Plaintiff demands **TWO BILLION ONE HUNDRED MILLION DOLLARS ($2,100,000,000)** in total damages. This is the amount requested, not a representation that the amount has already been established by evidence Any award must be based on the claims, admissible proof, applicable law, and the Court's instructions

## XXI. LIMITATIONS PERIODS

143. Plaintiff seeks recovery for actionable publications within the applicable limitations periods The one-year limitations period applicable to libel and slander is set out in Tenn Code Ann. § 28-3-104(a)(1)(A), the applicable limitations rule for each claim governs.

144 Earlier events are included as background and context where permitted by law Plaintiff does not rely on the continuing-effects doctrine to revive a time-barred publication

145 The publications on which Plaintiff seeks recovery are identified by date, approximate time, program, speaker as heard, and quoted words in the factual allegations above

## XXII. PRESERVATION OF EVIDENCE

146 Plaintiff alleges that relevant evidence may be in the possession, custody, or control of Defendants or other entities, including broadcast recordings, audio files, transcripts, program logs, production notes, communications among hosts and producers, emails, text messages, social-media communications, syndication and distribution records, and correspondence concerning the broadcasts.

147. Plaintiff requests that Defendants preserve relevant recordings, transcripts, production materials, and communications concerning the particular statements and publications identified in this Complaint, subject to applicable rules and preservation obligations.

148 Plaintiff further requests preservation of relevant records concerning speaker identity, broadcast dates and context, editorial or production involvement, distribution into Tennessee, and communications that identify Plaintiff as the subject

## XXIII. PLAINTIFF'S PROFESSIONAL GOALS, LOST OPPORTUNITIES, AND CUMULATIVE HARM

149 After leaving her employment with Memphis Light, Gas and Water Division ("MLGW") in approximately 2011, Plaintiff intended to build a successful tax-preparation business, achieve financial independence, relocate, obtain a master's degree, accumulate substantial wealth, and eventually have sufficient financial resources to pursue public office.

150. Plaintiff pursued self-employment and developed her professional livelihood with the expectation that her work, business relationships, and financial efforts would allow her to advance toward those goals

151 The conduct described in this Complaint, including the publication of false or damaging statements concerning Plaintiff's character and professional activities, interfered with her ability to build and maintain her business, retain clients, preserve her professional reputation, and achieve financial stability.

152 The resulting economic and reputational harm extended across Plaintiff's efforts to maintain her livelihood, pursue further education, relocate, secure employment, and establish the financial foundation necessary for her future.

153. The loss of clients, business opportunities, income, and professional standing placed substantial pressure on Plaintiff's financial stability and brought her circumstances close to homelessness Plaintiff seeks damages for those hardships to the extent proximately caused by actionable conduct.

154 Plaintiff continued pursuing her education despite these difficulties and worked toward completing her Master of Accountancy degree She alleges that the damage to her professional reputation and the loss of financial resources made it more difficult to pursue employment and rebuild the economic security she had intended to achieve

155. Plaintiff's decision to pursue public office arose from goals she had developed for her future and was not the origin of the earlier business and professional difficulties alleged in this Complaint.

156 Plaintiff further alleges that the financial harm she experienced limited the resources available to support her 2026 campaign for the United States Senate in Tennessee. She was unable to self-fund her campaign to the extent she had hoped, thereby limiting her ability to devote her own financial resources to the campaign and its activities

157 These injuries must be considered cumulatively when evaluating the nature and extent of the harm caused by Defendants' actionable conduct Plaintiff seeks recovery for economic losses, reputational injury, and other damages legally caused by the publications.

## XXIV PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court, after notice and opportunity for the parties to be heard, enter judgment in her favor and against any Defendant found liable and award the following relief to the extent permitted by law

A. Compensatory damages in the total amount of **TWO BILLION ONE HUNDRED MILLION DOLLARS ($2,100,000,000)**, or such amount as may be established by admissible evidence and determined by the trier of fact;

B. Damages for proven loss of business revenue, clients, and business opportunities,

C Damages for proven loss of employment and professional opportunities, including any loss legally caused by actionable conduct concerning Plaintiff's efforts to obtain employment with EY,

D. Damages for injury to reputation and professional standing,

E. Damages for emotional distress, humiliation, and mental anguish to the extent recoverable under applicable law,

F Punitive damages if Plaintiff establishes the required legal standard,

G Prejudgment and post-judgment interest as permitted by law,

H. Costs of this action and other expenses recoverable by law,

I. Appropriate relief to preserve assets or prevent fraudulent transfers only to the extent authorized by federal law and supported by the required legal and evidentiary showing,

J Appropriate orders preserving relevant evidence and, after judgment, discovery and enforcement relief authorized by the Federal Rules of Civil Procedure and applicable law, and

K Such other relief as the Court determines to be just and proper.

XXV. JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury

Respectfully submitted,

/s/ Yoshi D. Matthews
Yoshi D Matthews

**YOSHI D. MATTHEWS**
Plaintiff, Pro Se
919 Conference Drive, Suite 4-108
Goodlettsville, Tennessee 37072
Email ydmatthews01@gmail com

Date November 4, 2026

**EXHIBIT INDEX**

Exhibit A — April 7, 2026 Department of Justice announcement
Exhibit B — September 3, 2026 broadcast evidence
Exhibit C — September 10, 2026 broadcast evidence
Exhibit D — May 7, 2026 broadcast evidence ("You want us to vote for her but you had us tearing this chic down")
Exhibit E — October 5, 2026 broadcast evidence ("Did you cry?")
Exhibit F — EY application communication
Exhibit G — Southern States Police Benevolent Association communication
Exhibit H — Education records supporting MTSU enrollment
Exhibit I — Evidence of publication distribution into Tennessee
Exhibit J — Documentation of Plaintiff's EFIN Expulsion
Exhibit K — Demonstrative illustration reflecting Plaintiff's perspective on the alleged media conduct

Exhibit L — March 19, 2026, statement made by Steve Harvey stating "Your attorney is not going to be able to help you"

## SERVICE ADDRESS INFORMATION

1 iHeartMedia, Inc — Attn Legal Department
20880 Stone Oak Pkwy, San Antonio, TX 78258

2 Radio License Holding CBC, LLC
780 Johnson Ferry Road, Suite 500, Atlanta, GA 30342

3. Cumulus Media Inc. — Attn Legal Department / Andrew S. Kersting, Esq
3280 Peachtree Road NW, Suite 2300, Atlanta, GA 30305

4. Urban One, Inc — Attn Legal Department
1010 Wayne Avenue, 14th Floor, Silver Spring, MD 20910

5 Steve Harvey
c/o iHeartMedia, Inc Legal Department, 20880 Stone Oak Pkwy, San Antonio, TX 78258

6. D L Hughley
c/o Urban One/Reach Media Inc Legal Department, 1010 Wayne Avenue, 14th Floor, Silver Spring, MD 20910

## CERTIFICATE OF SERVICE

I certify that on November 4, 2026, I caused a true and correct copy of the filed complaint for damages and jury demand, including the summons, to be served on the Defendants listed in the Service Address Information by a method authorized by Federal Rule of Civil Procedure 4

Yoshi D Matthews, Plaintiff Pro Se